FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA     2004 APR -1  PM 4:42
TAMPA DIVISION

CLERK U.S. DISTRICT COURT
TAMPA, FLORIDA

NAUTICAL SOLUTIONS MARKETING,
INC. f/k/a EBOATING MARKETING
GROUP, INC.,

    Plaintiff,

v.                                Case No. 8:02-cv-760-T-23TGW

BOATS.COM,

    Defendant.
_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Section 2201 of Title 28, United States Code, Nautical Solutions Marketing, Inc. ("NSM") seeks a declaration that NSM infringed no copyright owned by Boats.com.[1] See 17 U.S.C. § 201, *et seq.* A jury trial occurred on November 18-26, 2003; the trial transcript was filed on January 27, 2004 (Docs. 213-221, 224, 226); and Boats.com and NSM submitted findings of fact and conclusions of law on February 6, 2004, and February 9, 2004, respectively (Docs. 223, 225).[2]

### Findings of Fact

Since 1995, Boats.com has owned and operated Yachtworld.com, an internet website on which subscribing yacht brokers post listings of yachts for sale. In 2001, NSM

---

[1] On November 17, 2003, the Court dismissed the portion of count one of the complaint that seeks a declaration of NSM's rights under (1) state trespass law and (2) the "Terms and Conditions of Use" of Boats.com's website Yachtworld.com. Only the portion of count one concerning copyright infringement remains.

[2] The jury found in favor of NSM on count two (defamation) and awarded NSM $250,000 in actual damages and $50,000 in punitive damages (Doc. 203). The jury found in favor of Boats.com on count three of the complaint (intentional interference with business relations) (Doc. 203). A judgment of $300,000 in favor of NSM and against Boats.com was entered on December 9, 2003 (Doc. 206).

started a competing website, Yachtbroker.com. Boats.com contends that two of the services offered by Yachtbroker.com violated Boats.com's copyrights during the period from November, 2001, to April, 2002.[3]

**Boat Rover**. The first service involves the use of an internet "spider" called "Boat Rover," which visits targeted public websites, extracts facts from the websites, and indexes the extracted facts in a searchable database accessible to users of Yachtbroker.com. From November, 2001, to early April, 2002, the Boat Rover program visited Yachtworld.com frequently to extract certain facts from Yachtworld.com's public yacht listings.

Boat Rover, a software program that runs on an NSM computer, connects to a targeted website, such as Yachtworld.com, and extracts from a public yacht listing the manufacturer, model, length, year of manufacture, price, location, and URL of the webpage containing the yacht listing.[4] Boat Rover extracts the facts by momentarily copying the hypertext markup language ("HTML") of the webpage containing the yacht listing and then collecting the prescribed facts, entering the facts into a searchable database, and finally discarding the HTML — all of this accomplished almost instantaneously. Boat Rover operated in this manner when extracting facts from Yachtworld.com during November, 2001, through April, 2002.[5] Boats.com contends that Boat Rover's extraction of facts from

---

[3] No party disputes that the allegedly infringing activity ceased in early April, 2002.

[4] Facts are not protected by copyright law. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 348 (1991) ("[Facts] may not be copyrighted and are part of the public domain available to every person.") (quoting Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1369 (5th Cir. 1981)).

[5] The record reveals no material difference between Boat Rover in its present form and Boat Rover as it existed from November, 2001, through April, 2002.

yacht listings on Yachtworld.com constitutes copyright infringement.

**Valet Service**. Yachtbroker.com also offers a "valet service." With the permission of a yacht broker who owns a yacht listing on another website, Yachtbroker.com moves, deletes, or modifies the yacht broker's listing.[6] At times between November, 2001, and April, 2002, as part of its valet service, Yachtbroker.com "copied and pasted" certain content, including pictures and descriptions, from yacht listings on Yachtworld.com and posted the content on Yachtbroker.com in a different format.[7] A preponderance of the credible evidence reveals that NSM's employees "copied and pasted" only the descriptions and pictures contained in each listing rather than the HTML for the entire webpage.

The webpage format employed by Yachtbroker.com to display the copied content differed substantially from the webpage format used by Yachtworld.com to display the original listing. For example, a typical yacht listing on Yachtworld.com displays a "thumbnail" picture of the yacht to the left of the basic facts (i.e., year, location, etc.). Yachtbroker.com displays a "thumbnail" picture of the yacht to the right of the basic facts.[8] In a Yachtbroker.com listing, the basic facts appear in a table; in a Yachtworld.com listing, the basic facts appear in bullet-points. A typical yacht listing on Yachtworld.com contains

---

[6] The record reveals that a yacht broker commonly lists boats on several websites.

[7] The parties agree that a yacht broker owns the descriptions and pictures used in a yacht listing posted by the broker (or the broker's agent) on a website to which the yacht broker subscribes. In any event, the record reveals that the pictures and descriptions in the yacht listings were created by the yacht brokers and that copyright in the pictures and descriptions was not transferred to Boats.com by yacht brokers. See 27 U.S.C. § 201 (copyright belongs only to the author or the author's transferee).

[8] The "thumbnail" picture of the yacht is larger on a Yachtbroker.com listing than on a Yachtworld.com listing. Also, on a Yachtworld.com listing, pictures of the yacht's interior are accessed by activating links located below the thumbnail of the yacht. These links open a new webpage containing the selected picture. On Yachtbroker.com, pictures of the yacht's interior are accessed by hitting the "next photo" button below the thumbnail of the yacht. Each picture of the yacht's interior appears in the same window as the thumbnail of the yacht.

along the left side a vertical blue wave in which several links appear; a typical listing on Yachtbroker.com contains no blue wave.  Finally, the color scheme, logo, and "look and feel" of a typical yacht listing on Yachtworld.com differ markedly from that of a typical listing on Yachtbroker.com.

Although the copied content posted on Yachtbroker.com contains many of the same descriptive headings as the original listings on Yachtworld.com, the record reveals that the headings were the industry standard for yacht listings on yacht brokering websites.[9]

### Conclusions of Law

**Boat Rover**.  Section 107 of Title 17, United States Code, provides that "the fair use of a copyrighted work . . . is not an infringement of copyright."  Boat Rover's momentary copying of Yachtworld's public web pages in order to extract from yacht listings facts unprotected by copyright law constitutes a fair use and thus "is not an infringement of copyright.[10]  See <u>Ticketmaster Corp. v. Tickets.com, Inc.</u>, 2003 WL 21406289 (C.D. Cal.

---

[9] The descriptions in a typical yacht listing are divided using headings, such as "electrical" to describe the electrical features of a yacht, "accommodations" to describe a yacht's accommodations, "galley" to describe the yacht's galley, and "sails and rigging" to describe the sails and rigging of the yacht.  The record reveals that at least two yacht brokering websites (BoatTraderOnline.com and AdventureYachtsInc.com) used the same headings as Yachtworld.com and Yachtbroker.com.

[10] 17 U.S.C. § 1027 identifies four factors determinative of "fair use:"

(1)   the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2)   the nature of the copyrighted work;
(3)   the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4)   the effect of the use upon the potential market for or value of the copyrighted work.

Although NSM's operation of Yachtbroker.com is a commercial venture, the record reveals no effect by Yachtbroker.com's temporary copying of Yachtworld.com's HTML on the "potential market for or value of" Yachtworld.com.  Further, because Yachtbroker.com's final product — the searchable database — contained no infringing material, the "amount and substantiality of the portion used" is of little weight.  Consideration of these factors commends the conclusion that NSM's extraction of facts from Yachtworld.com constitutes a fair use.

March 7, 2003) ("Taking the temporary copy of the electronic information for the limited purpose of extracting unprotected public facts leads to the conclusion that the temporary use of the electronic signals was 'fair use' and not actionable."); see also <u>Assessment Tech. v. Wiredata, Inc.</u>, 350 F.3d 640 (7th Cir. 2003); <u>Sega Enters. v. Accolade, Inc.</u>, 977 F.2d 1510 (9th Cir. 1992).

**Valet Service.** NSM copied only the pictures and descriptions from Yachtworld.com's yacht listings. Individual yacht brokers, not Yachtworld.com, own the copyright to these pictures and descriptions. Accordingly, NSM's copying of the content fails to constitute an infringement of copyright against Boats.com. See 17 U.S.C. § 201.

Boats.com claims a copyright in the headings used in the yacht listings on Yachtworld.com (e.g., "galley," "accommodations," etc.). However, the headings are not protected by copyright law because the headings merge with the idea of listing a yacht for sale. See, e.g., <u>Palmer v. Braun</u>, 287 F.3d 1325, 1330 (11th Cir. 2002) ("[I]n certain cases, there are so few ways of expressing an idea that the idea and its expression merge. Under the so-called 'merger doctrine,' these few expressions do not receive copyright protection, since protection of the expressions would thus extend protection to the idea itself."); <u>Bellsouth Adver. and Publ'g Corp. v. Donnelly Info. Publ'g, Inc.</u>, 999 F.2d 1436, 144-43 (11th Cir. 1993) (terms such as "attorneys" and "banks" used in the plaintiff's business directory "represent such an obvious label for the entities appearing under these headings as to lack the requisite originality for copyright protection"); <u>Schoolhouse, Inc. v. Anderson</u>, 275 F.3d 726, 730 (8th Cir. 2002) ("Similarity in expression cannot be used to show copyright infringement when there is only one way or only a few ways of expressing an idea."); <u>Matthew Bender & Co. v. Kluwer Law Book Publishers, Inc.</u>, 672 F. Supp. 107, 111 (S.D.N.Y. 1987) (under merger doctrine, the plaintiff could claim no copyright protection in

headings used to display data regarding personal injury awards where "terms employed are the most logical and clear way of expressing the idea to be conveyed . . . [and] these terms, or synonyms for them, are the only way of conveying the desired information.").

Boats.com also claims a copyright in the "look and feel," i.e., the layout and format, of the Yachtworld.com webpages that contain the yacht listings. As discussed earlier, the layout and format of the two websites are quite dissimilar. "To the extent that there is similarity between the two websites, the similarity derives from unprotectable elements," including the pictures, headings, and descriptions in the yacht listings. Crown Awards, Inc. v. Trophy Depot, 2003 WL 22208409, at *15 (E.D.N.Y. September 3, 2003) (the plaintiff failed to establish a substantial likelihood of success on the merits of a copyright infringement claim where the websites differed both in "design aesthetics," e.g., the color scheme, and in "graphic presentation," e.g., the size of the thumbnail pictures and general layout of the text); Mist-on Systems, Inc. v. Gilley's European Tan Spa, 2002 WL 32350072, at *3-5 (W.D. Wisc. May 2, 2002) ("Some additional similarity beyond generic formatting is necessary to establish infringement. . . . The similarities between the two [webpages] do not arise from protected expression. Rather, they arise from the parties' use of a common format to address topics common to the [similar subject of the two webpages]."). Accordingly, NSM failed to infringe any copyright in the "look and feel" of Yachtworld.com.

Finally, Boats.com claims a copyright in Yachtworld.com to the extent that the yacht listings constitute a "compilation."[11] The "virtual identicality" standard determines infringement of a compilation copyright. See Mitek Holdings, Inc. v. Arce Eng'g Co., Inc.,

---

[11] This order assumes (but only for the purpose of discussion) that the yacht listings on Yachtworld.com constitute a "compilation" subject to copyright protection.

89 F.3d 1548, 1558-59 (11th Cir. 1996) (in the case of an alleged infringement of a compilation, "there can be no infringement unless the works are virtually identical."); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."). Once again, because the format used by NSM to display on Yachtbroker.com the content copied from Yachtworld.com differs from the format used by Yachtworld.com to display the same information, Yachtbroker.com's "compilation" of yacht listings was not virtually identical to Yachtworld.com's "compilation" of yacht listings. See Mitek, 89 F.3d at 1558-59.

In sum, NSM infringed no copyright owned by Boats.com. The Clerk is directed to enter a judgment in favor of NSM and against Boats.com on count one of the complaint.

Because all "new" information provided in NSM's "Supplemental Motion to Tax Costs or in the Alternative Motion for Reconsideration of Order on Plaintiff's Motion for Taxation of Costs" (Doc. 212) was available to NSM when NSM filed its original motion to tax costs, the "Supplemental Motion" (Doc. 212) is **DENIED**.

ORDERED in Tampa, Florida, on _April 1st_, 2004.

_[signature]_
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

cc: U.S. Magistrate Judge
   Courtroom Deputy

F I L E   C O P Y

Date Printed: 04/02/2004

Notice sent to: 

    George Donovan Conwell Jr., Esq.
    Fowler White Boggs Banker, P.A.
    501 E. Kennedy Blvd.
    P.O. Box 1438
    Tampa, FL  33601-1438

    8:02-cv-00760    ch

    Gayle Wrede Kirkpatrick, Esq.
    Fowler White Boggs Banker, P.A.
    501 E. Kennedy Blvd.
    P.O. Box 1438
    Tampa, FL  33601-1438

    8:02-cv-00760    ch

    Scott D. Baker, Esq.
    Crosby, Heafey, Roach & May
    Four Embarcadero Center, 19th Fl.
    P.O. Box 7936
    San Francisco, CA  94111

    8:02-cv-00760    ch

    Anne S. Mason, Esq.
    Mason Law, P.A.
    Mangrove Bay
    17757 U.S. Hwy. 19, N. Suite 500
    Clearwater, FL  33764-6566

    8:02-cv-00760    ch